# 13-2394

## IN THE
## United States Court of Appeals
### FOR THE SECOND CIRCUIT

JACK NICHOLSON,
individually and on behalf of a class,

*Plaintiff - Appellant,*

v.

FORSTER & GARBUS LLP;
RONALD FORSTER;
MARK A. GARBUS,

*Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT COURT OF NEW YORK (CENTRAL ISLIP)

**OPENING BRIEF OF PLAINTIFF-APPELLANT
JACK NICHOLSON
AND SPECIAL APPENDIX**

FELDMAN and FELDMAN
Attorneys at Law
626 Reckson Plaza
West Tower, Sixth Floor
Uniondale, New York 11556
(516) 522-2828

Arza Feldman
*Attorney for Plaintiff-Appellant*

LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia 23219 (804) 644-0477
A Division of Lantagne Duplicating Services

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

STATEMENT OF SUBJECT MATTER
      AND APPELLATE JURISDICTION . . . . . . . . . . . . . . iii

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD OR SCOPE OF REVIEW . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

POINT 1:

      THE DISTRICT COURT ERRED WHEN IT
      DENIED APPELLANT'S MOTION FOR
      SUMMARY JUDGMENT, GRANTED
      APPELLEE'S MOTION FOR SUMMARY
      JUDGMENT, AND DISMISSED THE
      COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      A. Standard of Appellate Review . . . . . . . . . . . . . . . . 13

      B. The Fair Debt Collection Practices Act
      ("FDCPA") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      C. Appellee violated the FDCPA by contracting with
      Intellicom of India, a separate foreign entity, to
      contact consumers to collect and negotiate debt and
      falsely represent, directly and by implication, that
      they were under the employ of Forster and Garbus
      and secrete their true identity . . . . . . . . . . . . . . . . . . . 15

D. Appellee, through their agent Intellicom, misrepresented that the communication to collect the debt was  from an attorney . . . . . . . . . . . . . . . . . . . . . .  20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

CERTIFICATE OF COMPLIANCE WITH
        FRAP RULE 32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

CERTIFICATE OF COMPLIANCE WITH
LOCAL RULE 32(a)(1)(E) . . . . . . . . . . . . . . . . . . . . . . . . . .  31

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . .  32

ADDENDUM - SPECIAL APPENDIX  . . . . . . . . . . . . . . . .  33

Opinion & Order in Case No. 11-cv-524,  EDNY, 2013
Judgment in a Civil Case 11-cv-524, EDNY, 2013

# TABLE OF AUTHORITIES

## CASES

*Beauchamp v. Finance Recovery Services*,
    2011 U.S. Dist. LEXIS 25512
    (S.D.N.Y. Mar.11, 2011) .............................................. 27

*Clomon v. Jackson*,
    988 F.2d 1314 (2d Cir. 1993)........................................ 14

*D'Amico v. City of N.Y.*,
    132 F.3d 145 (2d Cir. 1998).......................................... 13

*DeSantis v. Computer Credit, Inc.*,
    269 F.3d 159 (2d Cir. 2001).......................................... 13

*Dixon v. United States*,
    465 U.S. 482 (1984)...................................................... 15

*Easterling v. Collecto*,
    692 F.3d 229 (2d Cir. 2012).......................................... 21

*Heintz v. Jenkins*,
    514 U.S. 291 (1995)...................................................... 15

*Mario v. P & C Food Markets, Inc.*,
    313 F.3d 758 (2d Cir. 2002).......................................... 12

*Miller v. Wolpoff & Abramson, L.L.P.*,
    321 F.3d 292 (2d Cir. 2003).......................................... 12

*Ostrander v. Accelerated Receivables*,
    07-CV-827C, 2009 WL. 909646
    (W.D.N.Y., March 31, 2009) ................................... 24, 25

*Pollice v. National Tax Funding, LP*,
    225 F.3d 379 (3rd Cir. 2000) ........................................ 18

*Russell v. Equifax A.R.S.*,
74 F.3d 30 (2d Cir. 1996).............................................. 14

*Savino v. Computer Credit*,
164 F.3d 81 (2d Cir. N.Y. 1998).................................... 26

*Shapiro v. Dun & Bradstreet Receivable Mgmt. Servs.*,
59 Fed. Appx. 406, 407-408 (2d Cir. N.Y. 2003).......... 26

*Terry v. Ashcroft*,
336 F.3d 128 (2d Cir. 2003).......................................... 12

*United States v. Davis*,
2013 U.S. App. LEXIS 16805 (2d Cir. N.Y. Aug. 14,
2013) ............................................................................ 23

## STATUTES

15 U.S.C. § 1692 ............................................................ 17, 19

15 U.S.C. § 1692e ................................................................ 13

28 U.S.C. §1291 .................................................................. iii

18 U.S.C. § 1331 ................................................................. iii

New York Judiciary Law § 487 ............................................. 4

New York General Business Law § 349 ................................. 4

Fair Debt Collection Practices Act, 15 U.S.C. § 1692....... 4, 11

## RULES

Fed. R. Evid 106.................................................................. 23

Federal Rule of Civil Procedure 56(a) .................................... 2

## OTHER

Restatement [Second] of Agency § 1 ..................................... 15

## STATEMENT OF SUBJECT MATTER
## <u>AND APPELLATE JURISDICTION</u>

i. The basis for subject matter jurisdiction in the district court was 18 U.S.C. § 1331.

ii. The basis for jurisdiction in this court is 28 U.S.C. §1291.

iii. The district court entered the judgment on May 28, 2013, and a notice of appeal was filed on June 14, 2013, making this appeal timely.

iv. This appeal is from a final judgment that disposes of all claims between the parties.

STATEMENT OF ISSUES

1. Did the Court err when it determined there was no violation of the Fair Debt Collection Practices Act as a matter of law, denied Appellant's motion for Summary Judgment and granted Summary Judgment in favor of the Appellee?

<u>STANDARD OR SCOPE OF REVIEW</u>

This Circuit reviews *de novo* a district court's grant or denial of summary judgment, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in his favor. Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

<u>STATEMENT OF THE CASE</u>

This is an appeal from a Judgment in the District Court for the Eastern District of New York (Hon. Sandra J. Fuerstein), dated May 28, 2013, which denied the Appellant's motion for Summary Judgment and granted Summary Judgment in favor of the Appellee.

## STATEMENT OF FACTS

### Procedural History

On February 2, 2011, Appellant JACK NICHOLSON ("Nicholson") commenced an action in the United States District Court for the Eastern District of New York ("District Court") on behalf of himself and others similarly situated, against Appellees RONALD FORSTER , MARK A. GARBUS and their law firm, FORSTER & GARBUS, LLP, (hereinafter collectively referred to as Forster & Garbus) alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et. seq., New York Judiciary Law § 487 and New York General Business Law § 349.

On January 30, 2011, the District Court granted Forster and Garbus' motion dismiss the claims brought by Appellant under the New York Judiciary Law § 487 and New York General Business Law § 349.

On May 17, 2013, the District Court granted Forster and Garbus' motion for Summary Judgment on the Appellant's claims under the FDCPA.

4

This appeals follows only with respect to the May 17, 2013 decision only.

Facts

Forster & Garbus, is a law firm are primarily engaged in the business of debt collection. In or about 2009 Atlantic Credit and Finance, Inc., retained Forster & Garbus to commence a collection proceeding against Nicholson. *(J. A. 264)* Plaintiff defaulted and Appellees obtained a judgment after default against him in December 2009. *(J. A. 266 - 268)*

Faced with the Judgment, Nicholson retained the services of attorney ABRAHAM KLEINMAN, ESQ. ("Kleinman") to negotiate the debt with Forster & Garbus. Indeed, Kleinman had contacted them and had been speaking with Mr. Garbus about the debt.

Unbeknownst to Kleinman or Nicholson, Forster & Garbus had a contract with JINDAL INTELLICOM CONTACT CENTERS ("Intellicom"), a call center in India, to make collection calls on their behalf *See Statement of Undisputed Material Facts,* ¶¶ 7*(J. A. 63)*. On December 10, 2010,  an

5

employee of Intellicom, who identified himself by the alias of Ralph Bryant, though his real name is Rahul Dhingra, *see Def. 56.1 Statement, ¶ 27, (J. A. 357)* called Nicholson.[1]  They had the following tape recorded conversation:

> *Mr. Bryant*: Okay. Mr. Jack, I'm calling you on behalf of Forster & Garbus, regarding you Atlantic Credit and Finance (indiscernable) account, sir.

> * * *

> *Mr. Bryant*: And this is an attempt to collect your debt. Any information obtained will be used for that purpose, and Mr. Jack, the same balance with is due on this account is $10,086.45, sir.

> *Mr. Nicholson*:All right. But listen to me . . . I've been working with Mr. Kleinman, the lawyer. So, I need you to contact him. He's supposed to be trying to do something with you guys to work out a settlement.

> * * *

---

1. "Ralph Bryant's" real name is Sony Niklaizawm Gangte, except that in his phone calls to Nicholson Gangte identifies himself as Ralph Bryant and in his phone call to Kleinman, he identifies himself as both David Murray and Ralph Bryant. Appellee's discovery responses identify Gangte as "Rahul Dingra." Gangte will be identified herein as "Bryant," unless when his use of another alias is material to the argument.

*Mr. Bryant*: Okay. Not a problem, sir . . . . What I'm going to do is, that I will take out the information from you, and I'll contact your lawyer and get this account paid, but before that, can you please verify me your current mailing address, just to make sure –

\* \* \*

*Mr. Nicholson*: Yeah, you can contact him. He has my paperwork. He was supposed to be in touch with you guys. I don't know if he spoke to anyone in your office, but he's already dealt with two other judgments for my wife's name.

\* \* \*

*Mr. Bryant*: Abraham Kleinman, sir. Not a problem, dir, I'll contact Mr. Abrahim (sic.) And the this account paid –

\* \* \*

*Mr. Bryant*: Yes. Because we have a very good offer to settle this account. I'll call him right now, okay?

Nicholson testified he was led to believe Bryant was an attorney from Forster & Garbus, because he started the conversation by saying he worked for Forster & Garbus. *(J. A. 277, 284)*. Nicholson acknowledged that the transcript of the recorded telephone conversation stated Bryant said he was calling "on behalf of" Forster & Garbus, but maintained he believed that

7

the call was from the attorneys. *(J. A. 278)*. He only found out after speaking with his attorney, Abraham Kleinman, Esq., that the call was not from the law firm, but originated from Intellicom's call center located in New Delhi, India. *(J. A. 284 - 286)*.

JOEL LIEDERMAN ("Liederman"), a senior associate attorney with Forster & Garbus in charge of compliance issues at the law firm, explained that in 2011 debt collection calls were routinely made from the main offices of Forster & Garbus, who were then located in Farmingdale, New York. *(J. A. 185, 195)*. In addition, Forster & Garbus had, and continues to have, a contract with Intellicom to make collection calls during its working hours in New York. *(J. A. 196, 200; 168)*.

There were no attorneys from Forster & Garbus in the India location. *(J. A. 202)*. If a consumer asked to speak with an attorney, they would be transferred to Forster & Garbus in New York or provided with their telephone number. *(J. A. 204, 237-239)*. Callers from Intellicom were trained by a woman called Monica, who worked for Intellicom, but was instructed by Forster

& Garbus. *Forster (J. A. 170)*. In general, Intellicom was "constantly monitored" by Forster & Garbus. *(J. A. 170; 104)*. However, at the time of the call to Nicholson, calls made by Intellicom were not regularly monitored by Forster & Garbus. *(J. A. 170)*.

Callers from Intellicom were authorized by Forster & Garbus to discuss a debt and reach a settlement with the consumer. *(J. A. 201)*. They did not tell the consumer that they were distinct from Forster & Garbus. *(J. A. 168)*. In addition, they used aliases. *(J. A. 168)*. In the instant case, the caller from Intellicom did not use his real name. *(J. A. 213 - 214)*.

Liederman did not know if the call was monitored, but acknowledged that Bryant never announced to Nicholson that it was. *(J. A. 216)*.

After speaking with Nicholson, Bryant called Abraham Kleinman, Esq. ("Kleinman"). He began the conversation by introducing himself as Mr. Bryant calling "on behalf of Forster & Garbus, regarding our mutual client, Mr. Jack R. Nicholson. *(J. A. 220)*.

9

Kleinman took some information and asked Bryant if he could have "Mr. Damsky call me from your firm. He's at extension 272." *(J. A. 223)*. Bryant, who falsely claimed to Kleinman that was his real name, sought to transfer Kleinman to a supervisor. *(J. A. 223)*. Bryant also falsely claimed to Kleinman that his headquarters were located in Farmingdale, New York, that being the location of Forster & Garbus at the time. *(J. A. 225, 240)*. When Kleinman called Forster & Garbus from a separate telephone line in his office, and pointedly asked Bryant where he actually was, Bryant hedged and stated he was calling from a secure site, a statement he had not been authorized to make by the law firm. *(J. A. 225, 241)*. Finally, Bryant admitted he was in India. *(J. A. 225)*. When Bryant's supervisor was put on the line, he admitted there were no attorneys from Forster & Garbus and the India site, but insisted he worked for Forster & Garbus. *(J. A. 228)*.

Based on these facts the Court denied Appellant's Motion for Summary Judgment and granted Summary Judgment in favor of the Defendant-Appellees .

## SUMMARY OF ARGUMENT

Appellee law firm's deceptive practices in directing a foreign entity, which it placed under its strict control and direction, to conceal its true identity and thus mislead the consumer, violated the provisions of the Fair Debt Collection Practices Act, 15 U.S.C 1692, et. seq.

<u>ARGUMENT</u>

<u>POINT 1</u>

THE DISTRICT COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR SUMMARY JUDGMENT, GRANTED APPELLEE'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSED THE COMPLAINT.

A. <u>Standard of Appellate Review</u>.

The Court reviews de novo a decision on a motion for summary judgment. *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 763 (2d Cir. 2002); *see also Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). Summary judgment is only appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Miller*, 321 F.3d at 300. In evaluating a judgment granting summary judgment, a Circuit Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment [was granted]." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (internal quotation marks omitted). This Court "utilizes the same standard

12

as the district court: summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998).

> B.    The Fair Debt Collection Practices Act ("FDCPA").

The FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection." *DeSantis v. Computer Credit, Inc*., 269 F.3d 159, 161 (2d Cir. 2001). In particular, section 1692e of the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  "The sixteen subsections of § 1692e set forth a non-exhaustive list of practices that fall within this ban. These subsections include: The false representation or implication that any individual is an attorney or that any communication is from an attorney. . . . [and] The use of any false representation or deceptive means to collect or attempt

to collect any debt or to obtain information concerning a consumer. *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

Whether an attempt at collection of a debt is "false, deceptive, or misleading" under the FDCPA is determined from the perspective of the objective "least sophisticated consumer." *Clomon v. Jackson*, 988 F.2d at 1318 (internal quotation marks omitted). Under this standard, "collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate." *Id*. at 1319. However, while the FDCPA aims at shielding the naive consumer, its protections do "not extend to every bizarre or idiosyncratic interpretation of a collection notice" and courts should apply the standard "in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices." *Id*. Debt collectors that violate the FDCPA are strictly liable, meaning that "a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir.

14

1996).

> C. Appellee violated the FDCPA by contracting with Intellicom of India, a separate foreign entity, to contact consumers to collect and negotiate debt and falsely represent, directly and by implication, that they were under the employ of Forster and Garbus and secrete their true identity.

Forster & Garbus, a law firm primarily engaged in debt collection, thereby subject to the FDCPA, routinely files between Ten Thousand and Twenty Thousand lawsuits every year. *(J. A. 192); see Heintz v. Jenkins*, 514 U.S. 291, 299 (1995).

In order to assist them in the collection of debt, Forster & Garbus contracted with Intellicom in India to act as their agent for the purpose of making calls to consumers and negotiating settlements.[2] Intellicom is a distinct and separate business entity from Forster & Garbus. As part of this arrangement, Forster & Garbus instructed an employee of Intellicom to train callers how to make calls to consumers. *(J. A. 170).* In addition, Forster &

---

2. An agency relationship is created when one person agrees with another "that the other shall act on his behalf and subject to his control." *See Dixon v. United States,* 465 U.S. 482, 505 (1984)(citing the Restatement [Second] of Agency § 1).

15

Garbus provide Intellicom with scripts ("or talk offs") instructing them on what to say, when to say it, and whom to say it to in virtually every scenario. *See Plaintiff's Memorandum in Support of Motion for Summary Judgment, Exhibit B, India "Talk Off." (J. A. 57 - 61)*

Appellee monitors the debt collectors at Intellicom for FDCPA compliance and reviews their calls. *(J. A. 170; 104)* According to the Appellee and the contract they have with Intellicom, Intellicom's conduct with the consumers referred to them by Forster & Garbus is done under the instructions, strict scrutiny and control of the Appellee. *See, F&G Contract with Intellicom, Plaintiff's Memorandum in Support of Motion for Summary Judgment, Exhibit 1. (J. A. 26- 39)*

As part of that training, Intellicom callers identify themselves as calling "on behalf of" Forster & Garbus. Also, as evidenced by the call made in this case, at no point do they disclose that they are employed by Intellicom. Nor do they provide their true name or notify the consumer that they are calling from New Delhi, India and not from Farmingdale, New

16

York. The reason behind the caller's false and misleading introduction is clear. Appellee knows that a phone call from a debt collector stationed 7,000 miles away in New Delhi, India, is far less intimidating than a phone call from a law firm with offices in New York. Thus, the Appellee has arranged for Intellicom to introduce themselves as Forster & Garbus rather than as Intellicom. Indeed, at no time during such a telephone call do the Intellicom callers utter the name Intellicom.

In essence, Forster & Garbus engaged the services of an unrelated outside corporation to communicate and negotiate settlements with consumers who are adverse parties. Here the adverse party was a consumer represented by counsel. Moreover, Forster & Garbus engaged and instructed their agent to do so without clearly disclosing the true name of its "business, company or organization." *See FDCPA, § 1692e (3), (14)*. Even in the face of direct, pointed questioning, the Intellicom supervisor refused to disclose the true nature of his business and continued to assert that he worked for Forster & Garbus. *(J. A. 228)*

17

A principal that qualifies as a "debt collector" under the FDCPA "may be held vicariously liable for unlawful collection activities carried out by another on its behalf." *See Pollice v. National Tax Funding, LP,* 225 F.3d 379 (3rd Cir. 2000). An entity engaged in the collection of debt, especially a law firm, must be held accountable for the activities of those it enlists to collect debts on its behalf. Here, by the Forster & Garbus' own admission, Intellicom was carrying out its instructions under its strict supervision and control.

Clearly, in violation of the FDCPA's prohibition against the use of any false representation or deceptive means to collect or attempt to collect a debt, Intellicom's conduct violates the FDCPA. In addition, the Appellee devised, implemented and orchestrated a scheme, whereby they instructed their agent, Intellicom, to systematically identified itself as working on behalf of, employed by or calling from the offices of Forster & Garbus in Farmingdale, New York. In fact, no employees of Intellicom are employees of Forster & Garbus. Intellicom is located in India, not in New York. No attorney from Forster & Garbus is present

18

at Intellicom's "secure location" in New Delhi, India.

The intentional concealment of the fact that a call to a consumer is from Intellicom of India, in and of itself is a violation of the FDCPA. *See 15 U.S.C. § 1692 e (14).* Furthermore, the intentional misrepresentation that the caller is working with, for or on behalf of Forster & Garbus, when they are not employed by Forster & Garbus, but are employed by a separate entity, is likewise a violation of the FDCPA. These deceptive practices result solely from the instructions and training by the Appellee, Forster & Garbus, who claim to monitor Intellicom for FDCPA compliance, review and monitor their calls and direct Intellicom's conduct under their strict scrutiny and control. In enlisting Intellicom to collect debts and devising collection practices that hides Intellicom's true identity from the consumer, Appellee has operated in a manner which can only be described as false and deceptive and clearly violative of the FDCPA.

Congress enacted  the FDCPA in order to protect abusive and misleading debt collection practices. Under the statutory scheme, law firms, who are engaged in the practice of debt

19

collection, cannot be permitted to engage non-legal entities to actively and deliberately hide their true identity from adverse parties in order to create the impression that the call is from an attorney's office. The sole purpose of misleading the consumer in this way is to emphasize the seriousness of the call and intensify the pressure on the consumer to settle the debt. Indeed, if that was not the purpose there would be no reason for Intellicom or any other such entity to disguise its true identity. Such deceptive practices clearly undermine the protections Congress intended to afford consumers in enacting the FDCPA. Thus, faced with such a clear violation of the FDCPA, the Court should have denied the Appellee's motion for Summary Judgment and granted summary judgment in favor of the Appellant.

D.   <u>Appellee, through their agent Intellicom, misrepresented that the communication to collect the debt was from an attorney.</u>

Under the unusual set of facts presented by this case, it was error for the District Court to grant summary judgment to the Appellees in the instant case on the mistaken grounds that "'even

the least sophisticated consumer' could not have reasonably "believed" that Bryant was an attorney" *See Decision, Fuerstein, J., page 5, ¶ 2. (J. A. 529)*

The operative inquiry under the law is not whether the words "on behalf of," uttered by Mr. Bryant, mean the same as "from." Nor is the operative inquiry whether those words could lead a least sophisticated consumer to have reasonably believed Bryant was an attorney once he said he was calling "on behalf of Forster & Garbus." Rather the operative inquiry is whether the hypothetical least sophisticated consumer could reasonably interpret Bryant's statement as meaning that he was calling from the offices of Forster & Garbus when, in fact, he was calling from a call center in India, owned and operated by a completely different entity than Forster & Garbus, located on a different continent, thousands of miles away from their offices in New York. *See Easterling v. Collecto*, 692 F.3d 229, 234-235 (2d Cir. 2012).

To interpret something is wholly different from whether one believes something. The inquiry, once properly framed, must

21

lead to the conclusion, that, the phrase "on behalf of" could be reasonably interpreted by a least sophisticated consumer to mean "from," and therefore was misleading as a matter of law. At the very least, such a scenario presents a legitimate question of material fact as to whether a least sophisticated consumer could have reasonably interpreted the term "on behalf of" to mean calling "from" the law firm.

Indeed, one need to look no further than the conversation between Bryant and Nicholson to see that Nicholson himself interpreted Bryant's introduction to mean that he was calling from the law firm of Forster & Garbus. Immediately in response to Bryant's opening introduction, Nicholson answered, "[a]ll right. But listen to me . . . I've been working with Mr. Kleinman, the lawyer. So, I need you to contact him. He's supposed to be trying to do something with you guys to work out a settlement." Clearly, Nicholson responded the way he did because he interpreted that the call was from a law firm and that his attorney was supposed to be speaking directly with Forster & Garbus, who he refers to as "you guys." He had no knowledge, nor could he have

22

reasonably been expected to know, that Forster & Garbus contracted with Intellicom to collect debts. Indeed, one could not expect a least sophisticated consumer to understand that a call center in India could be employed by a regional law firm in New York.

Moreover, the scheme to conceal the fact that the caller was from a distinct corporate call center in India, is further revealed by the conversation between Bryan and Kleinman, which must be reviewed in accordance with the rule of completeness.[3] In that conversation, Bryant falsely claimed to Kleinman that was his real name. *(J. A. 223)*. Bryant also falsely claimed to Kleinman that his headquarters were located in Farmingdale, New York, that being the location of Forster & Garbus at the time. *(J. A. 225, 240)*. When Kleinman called Forster & Garbus from a separate telephone line in his office, and pointedly asked Bryant

---

3. " Under the rule of completeness, '[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time.'" *United States v. Davis*, 2013 U.S. App. LEXIS 16805 (2d Cir. N.Y. Aug. 14, 2013)(citing Fed. R. Evid 106).

23

where he actually was, Bryant hedged and stated he was calling from a secure site, a statement Liederman claimed he had not been authorized to make by the law firm. *(J. A. 225, 241).* Only after repeated requests did Bryant finally admit he was in India. *(J. A. 225).*

When Bryant's supervisor got on the line, he admitted there were no attorneys from Forster & Garbus and the India site, but insisted he worked for Forster & Garbus. *(J. A. 228).* The two conversations, considered together, evidence that Intellicom representatives took repeated and dedicated steps to hide their true identity and location and that the caller was not Forster & Garbus, but Intellicom. This was clearly part of a global plan instituted to misrepresent the caller's identity and employer in clear violation of the FDCPA. In this context, the use of the words "on behalf of" most certainly were intended to be interpreted by the least sophisticated consumer to mean calling "from" the law firm with the purpose to mislead.

The court's reliance on *Ostrander v. Accelerated Receivables*, 07-CV-827C, 2009 WL 909646 (W.D.N.Y., March

24

*31, 2009)* in determining that the call was not misleading, was misplaced and its non-binding rational should not be followed by this Court. Indeed, that case is wholly inapposite to the case at bar. Here, Nicholson had been sued by Forster & Garbus and they had filed a judgment against him. He knew them to be a law firm licensed to practice law in the State of New York. In *Ostrander*, to the contrary, there was no legal action commenced. In addition, the use of the term "legal department" in that case cannot be compared to a representation that one is calling on behalf of a law firm known to the consumer. Many entities have legal departments and a least sophisticated consumer may not, in fact, as a matter of law, interpret that term to give the "false representation or implication" that the communication was from an attorney. That is not the case, however, where a particular law firm institutes legal action and files a judgment and then the consumer receives a call "on behalf of" that same law firm from Intellicom, a call center in a foreign country. Under such circumstances, there is no doubt that a least sophisticated consumer could interpret that call to give the "false representation

25

or implication" that the communication was from an attorney. Thus, Summary Judgment should have been properly granted in favor of the Appellant.

Alternatively, the District Court should have found that a question of fact existed sufficient to defeat Appellee's motion. One may posit that a least sophisticated consumer's interpretation of words used during a telephone call, is a question of fact for a jury to determine and is not subject to summary judgment. Concededly, this Court has held that "[t]he question of whether language in a debt-collection letter overshadows or contradicts other language in an impermissible fashion is a question of law [this Court ] review[s] de novo." *Shapiro v. Dun & Bradstreet Receivable Mgmt. Servs.*, 59 Fed. Appx. 406, 407-408 (2d Cir. N.Y. 2003); *see also Savino v. Computer Credit, 164 F.3d 81 (2d Cir. N.Y. 1998)*(review of written notice). Although courts are divided on whether breach of the least sophisticated consumer standard is a question of law or fact, the trend in the Second Circuit is to treat this question as a matter of law that can be resolved on a motion to dismiss or summary judgment. *See*

26

*Beauchamp v. Fin. Recovery Servs.*, 2011 U.S. Dist. LEXIS 25512 (S.D.N.Y. Mar. 11, 2011).

An analysis of those cases reveals, however, that what has been generally reviewed by the courts is a letter or a notice. Here, however, the court was not reviewing a white piece of paper with printed words. Here, there are recorded conversations that took less than two minutes, received unexpectedly. Human conversation is something that can be interpreted differently depending on the speaker's tone of voice and the manner of speech. Arguably, something that is heard during a few seconds is processed differently in the brain than something that is read and can be re-read. In certain contexts, two individuals may hear the same words and interpret them differently. Given the heterogeneity of human discourse, what something may mean in a conversation presents a question of fact. Viewed through this prism, it was entirely reasonable for Mr. Nicholson to interpret what Mr. Bryant said to mean he was calling from Forster & Garbus. In any event, the conversation between Mr. Bryant and Mr. Nicholson, which occurred during a quick unexpected

27

telephone call, presents a cognizable issue of fact sufficient to defeat the  motion for summary judgment.

Accordingly, the judgment of the district court should be reversed and the matter remanded for further proceedings.

<u>CONCLUSION</u>

THE JUDGMENT OF THE DISTRICT COURT SHOULD BE REVERSED AND THE MATTER REMANDED TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS.


*/s/ Arza Feldman*
Arza Feldman,
Attorney for Appellant


Dated: September 30, 2013
      Uniondale, New York 11556

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

JACK NICHOLSON,

                    *Appellant*,

       v.

FORSTER & GARBUS, LLP,

                    *Appellee*.

## CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32

      I, Arza Feldman, hereby certify that, pursuant to Rule 32 of

the Federal Rules of Appellate Procedure, while this brief may

exceed 30 pages, it does not exceed 1,300 lines or 14,000 words.

Instead, it contains 565 lines and 4,539 words.

                    */s/ Arza Feldman*
                    Arza Feldman

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

JACK NICHOLSON,

*Appellant*,

v.

FORSTER & GARBUS, LLP,

*Appellee*.

CERTIFICATE OF COMPLIANCE WITH LOCAL
RULE 32(a)(1)(E)

I, Arza Feldman, hereby certify that, on September 30, 2013, Feldman & Feldman, Attorneys at Law, drafted this brief, in Wordperfect Version 12, scanned it for viruses with Trend Micro, converted it to PDF format, viewable with Adobe Acrobat writer, and caused Lantagne Legal Printing to electronically file a version, which is identical to the hard copy, with the Court, on Pacer.

*/s/ Arza Feldman*
Arza Feldman

31

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

JACK NICHOLSON,

                    *Appellant*,              CERTIFICATE
                                              OF SERVICE

         v.

FORSTER & GARBUS, LLP,

                    *Appellee*.

         I, Arza Feldman, affirm, under penalties of perjury, that, on

September 30, 2013, we caused Lantagne Legal Printing to serve

a copy of Appellant's brief and Joint Appendix by first class,

United States mail, on Kaufman, Borgeest and Ryan LLP, 120

Broadway, New York, New York 10271.


          */s/ Arza Feldman*
         Arza Feldman
         Feldman & Feldman

32

## ADDENDUM - SPECIAL APPENDIX

Opinion & Order in Case No. 11-cv-524, EDNY, 2013

Judgment in a Civil Case, 11-cv-524, EDNY, 2013

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JACK NICHOLSON,

                              Plaintiff,

                                                    **OPINION AND ORDER**
            -against-                               **11-CV-524 (SJF)(WDW)**

FORSTER & GARBUS LLP, RONALD FORSTER,       **F I L E D**
and MARK A. GARBUS,                         IN CLERK'S OFFICE
                                            U.S. DISTRICT COURT E.D.N.Y.

                              Defendants.       ★ ₓ  **MAY 17 2013**    ★
-------------------------------------------------------------------X

                                            LONG ISLAND OFFICE

FEUERSTEIN, J.

      On February 2, 2011, plaintiff Jack Nicholson ("plaintiff") commenced this action, on

behalf of himself and others similarly situated, against Forster & Garbus LLP, Ronald Forster

and Mark A. Garbus ("defendants"), alleging violations of the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. §§ 1692 et seq., New York Judiciary Law § 487, and New York General

Business Law § 349. [Docket Entry No. 1] ("Compl."). On January 30, 2012, the Court granted

defendants' motion to dismiss the claims asserted pursuant to New York Judiciary Law § 487

and New York General Business Law § 349. [Docket Entry No. 16]. Now before the Court are

the cross-motions of defendants [Docket Entry No. 43] and plaintiff [Docket Entry No. 37] for

summary judgment on the remaining FDCPA claim. [Docket Entry No. 37].[1]  For the reasons

---

[1]      On March 4, 2013, after the parties filed their motions for summary judgment, plaintiff
filed a motion for class certification. [Docket Entry No. 58]. Neither party objects to the Court
deciding the motions for summary judgment prior to the pending class certification motion. See
Pl. Memo. at 11 ("It is within the court's discretion to consider the merits of the claims before
their amenability to class certification."); see also, e.g., Schweizer v. Trans Union Corp., 136
F.3d 233, 239 (2d Cir. 1998) ("There is nothing in Rule 23 which precludes the court from
examining the merits of plaintiff's claims on a proper Rule 12 motion to dismiss or Rule 56
motion for summary judgment simply because such a motion precedes resolution of the issue of
class certification.") (internal quotation marks omitted).

that follow, defendants' motion is GRANTED, and plaintiff's motion is DENIED.

I.    Background

Forster & Garbus, a law firm primarily engaged in debt collection, was retained by

Atlantic Credit & Finance, Inc. in 2009 to commence a collection action against plaintiff.

Defendants' Rule 56.1 Statement of Undisputed Material Facts [Docket Entry No. 44] ("Def.

56.1 Stmt.") at ¶¶ 1-2. Plaintiff failed to appear in the collection action, and Forster & Garbus

obtained a default judgment against him in December 2009. Id. at ¶¶ 2-4.

Forster & Garbus contracted with Intellicom Contact Centers ("Intellicom"), a call center

in India, to make collection calls on its behalf. Id. at ¶ 7. On December 10, 2010, plaintiff spoke

to an Intellicom employee who identified himself as Ralph Bryant. Id. at ¶¶ 26-27.[2] The call

was recorded, and the transcript reads, in relevant part, as follows:

> Mr. Bryant: Okay. Mr. Jack, I'm calling you on behalf of Forster & Garbus,
> regarding your Atlantic Credit and Finance (indiscernible) account, sir.
>
> * * *
>
> Mr. Bryant: And this is an attempt to collect your debt. Any information
> obtained will be used for that purpose, and Mr. Jack, the same balance with is due
> on this account is $10,086.45, sir.
>
> Mr. Nicholson: All right. But listen to me. . . . I've been working with Mr.
> Kleinman, the lawyer. So, I need you to contact him. He's supposed to be trying
> to do something with you guys to work out a settlement.
>
> * * *
>
> Mr. Bryant: Okay. Not a problem, sir. . . . What I'm going to do is, that I will
> take out the information from you, and I'll contact your lawyer and get this
> account paid, but before that, can you please verify me your current mailing
> address, just to make sure –
>
> * * *

---

[2]    The Intellicom employee's real name is Rahul Dhingra. Def. 56.1 Stmt. at ¶ 27.

2

Mr. Nicholson: Yeah, you can contact him. He has my paperwork. He was supposed to be in contact with you guys. I don't know if he spoke to anyone in your office, but he's already dealt with two other judgments for my wife's name.

\* \* \*

Mr. Bryant: Abraham Kleinman, sir. Not a problem, sir, I'll contact Mr. Abrahim (sic), and get this account paid –

\* \* \*

Mr. Bryant: Yes. Because we have a very good offer to settle this account. I'll call him right now, okay?

\* \* \*

Affidavit of Joel D. Liederman ("Liederman Aff.") Ex. F [Docket Entry No. 46-6].

II.    Standard

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks omitted). "There is no genuine issue of material fact where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Fabrikant v. French, 691 F.3d 193, 205 (2d Cir. 2012) (internal quotation marks omitted); see

3

<u>also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

III.   Analysis

The FDCPA proscribes the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "Congress enacted [the] FDCPA in order to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." <u>Greco v. Trauner, Cohen & Thomas, L.L.P.</u>, 412 F.3d 360, 363 (2d Cir. 2005) (internal quotation marks omitted). To determine whether the FDCPA has been violated, a court must view the conduct in question objectively from the perspective of the "'least sophisticated consumer.'" <u>Jacobson v. Healthcare Fin. Servs., Inc.</u>, 516 F.3d 85, 90 (2d Cir. 2008) (quoting <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1318 (2d Cir. 1993)); <u>see also</u> <u>Gabriele v. Am. Home Mortg. Serv., Inc.</u>, No. 12-985-cv, 2012 WL 5908601, at *4 (2d Cir. Nov. 27, 2012) ("Our case law demonstrates that communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA."). The purpose of this objective standard is to "ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." <u>Clomon</u>, 988 F.2d at 1318. "[I]n addition to protecting consumers against deceptive debt collection practices, the objective test . . . protects debt collectors from unreasonable constructions of their communications." <u>Jacobson</u>, 516 F.3d at 90 (citation and quotation marks omitted); <u>see also</u> <u>Clomon</u>, 988 F.2d at 1319 (stating that "in crafting a norm that protects the

4

A-4

naive and the credulous the courts have carefully preserved the concept of reasonableness")
(citation omitted).

According to plaintiff, "[t]he practice of having a non attorney contact consumers from
an independent Call Center located in India representing that the caller is a member of Forster &
Garbus LLP violates [the FDCPA], by misrepresenting that the caller is a member of Forster &
Garbus or under the direct supervision of an attorney at Forster & Garbus when he is not."
Compl. at ¶ 10.[3] Defendants argue that plaintiff's FDCPA claim must be dismissed because
(1) Bryant "made no misrepresentations regarding his identity or the fact that he was not an
attorney, and therefore it was not reasonable for [plaintiff] to believe otherwise," and (2) even if
defendants or Intellicom made misrepresentations to plaintiff, such misrepresentations were not
material.[4]

The transcript of the December 10, 2010 call demonstrates that even the "least
sophisticated consumer" could not have reasonably believed that Bryant was an attorney.
Although Bryant stated that he was calling "on behalf of Forster & Garbus," he did not state or

---

[3]    Plaintiff specifically alleges that defendants' conduct violated the provisions of the
FDCPA prohibiting: (1) the "false representation or implication that any individual is an attorney
or that any communication is from an attorney," 15 U.S.C. § 1692e(3); (2) "[t]he use of any false
representation or deceptive means to collect or attempt to collect any debt or to obtain
information concerning a consumer," 15 U.S.C. § 1692e(10); and (3) "[t]he use of any business,
company, or organization name other than the true name of the debt collector's business,
company, or organization," 15 U.S.C. § 1692e(14).

[4]    Given the Court's determination that the December 10, 2010 call was not misleading, it is
not necessary to decide whether the alleged misrepresentations were material and whether
materiality is a requirement for an actionable FDCPA claim.  See, e.g., Gabriele, 2012 WL
5908601, at *3 ("[S]everal other circuit courts, as well as a number of district courts in this
Circuit, read a materiality requirement into the FDCPA's prohibition of false, deceptive, or
misleading practices in the collection of a debt."); Shami v. Nat'l Enter. Sys., --- F. Supp.2d ---,
2012 WL 6720698, at *7 (E.D.N.Y. Dec. 27, 2012) ("Even an objectively false statement must
be material to violate § 1692."); Lane v. Fein, Such and Crane, LLP, 767 F. Supp.2d 382, 390
(E.D.N.Y. 2011) (holding that statement was not "materially false or misleading, and thus does
not violate Section 1692e").

5

imply that he was himself an attorney, see Ostrander v. Accelerated Receivables, No. 07-CV-

827C, 2009 WL 909646, at *6 (W.D.N.Y. Mar. 31, 2009) ("Even applying the 'least

sophisticated consumer' standard, it cannot be said that by simply stating that she worked in the

'legal department,' defendant . . . gave a 'false representation or implication' that she was an

attorney at law or that the communication was from an attorney, in violation of 15 U.S.C.

§ 1692e(3)."), and plaintiff has offered no support for the proposition that the FDCPA prohibits a

non-attorney from contacting debtors on an attorney's behalf, see Gabriele, 2012 WL 5908601,

at *4 ("[C]ommunications from debt collectors that are misleading or deceptive as to the identity

or involvement of the debt collector violate the FDCPA.") (citing Maguire v. Citicorp Retail

Servs., Inc., 147 F.3d 232, 237-38 (2d Cir. 1998); Clomon, 988 F.2d at 1321-22).

     The Court rejects plaintiff's argument that Bryant's statement, "[W]e have a very good

offer to settle this account," Liederman Aff. Ex. F, "unequivocally convey[ed] the impression

both to Plaintiff and Plaintiff's counsel that he had full authority to unilaterally negotiate a

settlement of Plaintiff's judgment," Plaintiff's Brief in Opposition to Defendants' Motion for

Summary Judgment [Docket Entry No. 50] ("Pl. Memo.") at 6-7. Given Bryant's representation

that he was calling "on behalf of" Forster & Garbus and the absence of any indication that he

was an attorney, there was no reasonable basis for a consumer to conclude from the mention of

the possibility of settlement that Bryant was an attorney representing the creditor. Therefore, the

December 10, 2010 phone call was not deceptive or misleading. Since plaintiff has not offered

any other evidence of alleged misrepresentations made by defendant or Intellicom to plaintiff,[5]

---

[5]    Defendants are correct that the alleged misrepresentations made by an Intellicom
employee to plaintiff's counsel subsequent to the December 10, 2010 call are not relevant to
plaintiff's FDCPA claim. See Tromba v. M.R.S. Assocs., Inc., 323 F. Supp.2d 424, 428
(E.D.N.Y. 2004) ("Plaintiff has no cause of action under the FDCPA where a communication
was solely directed to her attorney and no threat was made regarding contact with the debtor

6

there is no genuine dispute as to any material fact with respect to whether defendants violated the

FDCPA, and plaintiff's complaint must be dismissed.[6]

IV.     Conclusion

For the foregoing reasons, defendants' motion for summary judgment [Docket Entry No.

43] is GRANTED, plaintiff's motion for summary judgment [Docket Entry No. 37] is DENIED,

and plaintiff's complaint is dismissed with prejudice. The Clerk of Court is respectfully directed

to close this case.

**SO ORDERED.**                                    /s/ Sandra J. Feuerstein

                                                   _____
                                                   SANDRA J. FEUERSTEIN
                                                   United States District Judge

Dated: May 17, 2013
       Central Islip, New York

---

herself."); Kropelnicki v. Siegel, 290 F.3d 118, 127-28 (2d Cir. 2002) ("Where an attorney is
interposed as an intermediary between a debt collector and a consumer, we assume the attorney,
rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing
behavior. However, this is not an issue on which we need to rule today.").

[6]     The Court rejects plaintiff's argument that it must allow a jury to determine whether
defendants' conduct was misleading. Pl. Memo. at 8 ("In order to grant Defendants the relief
they request, this Court would necessarily have to address an issue normally reserved for a jury;
that question being whether the Defendants' collection practices would tend to mislead or
confuse the unsophisticated consumer. For this reason alone, Defendants' motion should be
denied."). Whether a communication by a debt collector is misleading to the least sophisticated
consumer is an objective question that may be determined by the Court as a matter of law. See,
e.g., Schweizer, 136 F.3d at 238 ("In this instance, . . . the question of deceptiveness is
appropriate for summary judgment."); Harry v. Pentagroup Fin., LLC, No. 04 Civ. 4003, 2007
WL 812998, at *2 (E.D.N.Y. Mar. 14, 2007) ("Whether the particular wording of a letter violates
the FDCPA is an issue of law that can be decided by a court on a motion for summary
judgment."); Berger v. Suburban Credit Corp., 04 Civ. 4006, 2006 WL 2570915, at *3 (E.D.N.Y.
Sept. 5, 2006) (stating that "the Second Circuit has indicated that the determination of how the
least sophisticated consumer would view language in a defendant's collection letter is a question
of law because the standard is an objective one") (citing Schweizer, 136 F.3d at 237-38; Bentley
v. Great Lakes Collection Bureau, 6 F.3d 60, 62-63 (2d Cir. 1993)).

7

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ MAY 24 2013 ★

LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------X
JACK NICHOLSON,

               Plaintiff,

      - against -

                 **JUDGMENT**
                 CV-11-0524 (SJF)(WDW)

FORSTER & GARBUS LLP, RONALD FORSTER
and MARK GARBUS,

               Defendants.
----------------------------------------------------------------------X

      A Opinion and Order of Honorable Sandra J. Feuerstein, United States District Judge,

having been filed on May 17, 2013, granting defendants' motion for summary judgment [Docket

Entry No. 43], denying plaintiff's motion for summary judgment [Docket Entry No. 37],

dismissing plaintiff's complaint with prejudice, and directing the Clerk of Court to close this

case, it is

      **ORDERED AND ADJUDGED** that plaintiff take nothing of defendants; that

defendants' motion for summary judgment [Docket Entry No. 43] is granted; that plaintiff's

motion for summary judgment [Docket Entry No. 37] is denied; that plaintiff's complaint is

dismissed with prejudice; and that this case is hereby closed.


Dated: Central Islip, New York
      May 24, 2013

                               DOUGLAS C. PALMER
                               CLERK OF THE COURT

                   By:    /s/ Catherine Vukovich
                         Deputy Clerk