# 13-2394

### In the
# United States Court of Appeals
## For the Second Circuit



JACK NICHOLSON, Individually and on behalf of a class,

*Plaintiff-Appellant,*

– v. –

FORSTER & GARBUS LLP, RONALD FORSTER and
MARK A. GARBUS,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

KAUFMAN BORGEEST & RYAN LLP
*Attorneys for Defendants-Appellees*
120 Broadway, 14th Floor
New York, New York 10271
(212) 980-9600

## <u>CORPORATE DISCLOSURE STATEMENT</u>
## <u>PURSUANT TO FED. R. APP. P. 26.1</u>

Defendant-Appellee Forster & Garbus LLP has no parent corporation and no

publicly held corporation owns 10% or more of Forster & Garbus LLP stock.

# **TABLE OF CONTENTS**

Pages

CORPORATE DISCLOSURE STATEMENT ................................................. i

TABLE OF CONTENTS.................................................................... ii-iii

TABLE OF AUTHORITIES ............................................................ iv-vii

PRELIMINARY STATEMENT ..................................................... 1-2

QUESTIONS PRESENTED............................................................ 3-4

COUNTERSTATEMENT OF FACTS ........................................... 5

      A. The Underlying Debt Collection Action ........................................... 5

      B. Forster & Garbus Retained Intellicom To Make a Portion of Its Collection Calls, and Trained and Continuously Monitored Intellicom for FDCPA Compliance.................................................... 5-8

      C. The December 10, 2010 Collection Call to Nicholson .................... 8-9

PROCEDURAL HISTORY ........................................................ 9-12

SUMMARY OF ARGUMENT ................................................... 12-13

STANDARD OF REVIEW ......................................................... 13-14

ARGUMENT ........................................................................... 14-29

    POINT I:   THERE WERE NO MISREPRESENTATIONS DURING THE DECEMBER 10, 2010 TELEPHONE CALL ............................................................... 14-19

    POINT II:   INTELLICOM'S STATEMENTS TO NICHOLSON'S ATTORNEY ARE NOT ACTIONABLE UNDER THE FDCPA ................................................................ 19-23

POINT III:  NICHOLSON    IMPROPERLY    RAISES    NEW
ARGUMENTS FOR THE FIRST TIME ON APPEAL ........ 23-26

POINT IV:  IF THE COURT CONCLUDES THAT THERE WERE
MISREPRESENTATIONS,  DISMISSAL  SHOULD
STILL  BE  AFFIRMED  BECAUSE  PLAINTIFF
ACKNOWLEDGES    THAT    THE    ALLEGED
MISREPRESENTATIONS WERE NOT MATERIAL ......... 26-29

CONCLUSION .............................................................................. 30

# TABLE OF AUTHORITIES

Pages

## Cases

Allen v. Coughlin,
64 F.3d 77 (2d Cir. 1995) ................................................................. 13

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ....................................................................... 14

Bogle–Assegai v. Connecticut,
470 F.3d 498 (2d Cir. 2006) ....................................................... 22, 24

Boyd v. J.E. Robert Co.,
2012 WL 4718723 (E.D.N.Y. 2012) ........................................... 19, 21

Broughman v. Chiari & Ilecki, LLP,
2012 WL 5880945 (W.D.N.Y. 2012) ........................................... 27, 29

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ....................................................................... 13

In re Cheaves,
439 B.R. 220 (M.D. Fla. Bkrt. 2010) .............................................. 18

Clomon v. Jackson,
988 F.2d 1314 (2d Cir. 1993) ..................................................... 14, 15

Corazzini v. Litton Loan Servicing LLP,
2010 WL 6787231 (N.D.N.Y. 2010) ............................................... 27

Diesi v. Shapiro,
330 F.Supp.2d 1002 (C.D. Ill. 2004) ........................................... 20, 21

Donohue v. Quick Collect, Inc.,
592 F.3d 1027 (9th Cir. 2010) ....................................................... 28

Easterling v. Collecto, Inc.,
692 F.3d 229 (2d Cir. 2012) ....................................................... 14, 15

iv

Gabriele v. American Home Mortg. Servicing, Inc.,
503 Fed.Appx. 89 (2d Cir. 2012) ..................................................... 28

Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP,
217 F.Supp.2d 336 (E.D.N.Y. 2002) ............................................... 17

Guerrero v. RJM Acquisitions LLC,
499 F.3d 926 (9th Cir. 2007) .................................................... 20, 21

Hahn v. Triumph Partnerships LLC,
557 F.3d 755 (7th Cir. 2009) ........................................................ 28

Hasbrouck v. Arrow Financial Services LLC,
2011 WL 1899250 (N.D.N.Y. 2011) ......................................... 27, 29

Jacobson v. Healthcare Financial Services, Inc.,
516 F.3d 85 (2d Cir. 2008) ............................................................ 14

Kropelnicki v. Siegel,
290 F.3d 118 (2d Cir. 2002) .................................................... 19, 21

Lane v. Fein, Such and Crane, LLP,
767 F.Supp.2d 382 (E.D.N.Y. 2011) ....................................... 27, 28

Leone v. Ashwood Financial, Inc.,
257 F.R.D. 343 (E.D.N.Y. 2009) ................................................... 19

Mears v. Montgomery,
2013 WL 5567480 (2d Cir. 2013) ................................................. 24

Miller v. Javitch, Block & Rathbone,
561 F.3d 588 (6th Cir. 2009) ........................................................ 28

Miller v. Wolpoff & Abramson, LLP,
321 F. 3d 292 (2d Cir. 2003) ........................................................ 13

Morales v. Forster & Garbus, LLP,
2012 WL 78630 (D. Ariz. 2012) .............................................. 20, 21

O'Rourke v. Palisades Acquisition XYI, LLC,
635 F.3d 938 (7th Cir. 2011) ............................................................... 29

Ostrander v. Accelerated Receivables,
2009 WL 909646 (W.D.N.Y. 2009) ................................................. 17

Rumpler v. Phillips & Cohen Associates, Ltd.,
219 F.Supp.2d 251 (E.D.N.Y. 2002) ............................................. 17

Samples v. Midland Credit Management, Inc.,
2012 WL 2576392 (M.D. Tenn. 2012) ........................................... 17

Schuh v. Druckman & Sinel, L.L.P.,
751 F.Supp.2d 542 (S.D.N.Y. 2010) .......................................... 20, 21

Shami v. National Enterprise Systems,
2012 WL 6720698 (E.D.N.Y. 2012) .............................................. 27

Tromba v. MRS Associates, Inc.,
323 F.Supp.2d 424 (E.D.N.Y. 2004) ........................................ 18, 19, 21

Walsh v. Law Offices of Howard Lee Schiff, P.C.,
2012 WL 4372251 (D. Conn. 2012) .............................................. 28

Warren v. Sessoms & Rogers, P.A.,
676 F.3d 365 (4th Cir. 2012) ....................................................... 28

Zaborac v. Phillips and Cohen Associates, Ltd.,
330 F.Supp.2d 962 (N.D. Ill. 2004) ............................................ 17, 19

**Federal Statutes**

15 U.S.C. §1692e ..............................................1, 9, 10, 14, 17, 18, 24, 27, 28

15 U.S.C. §1692e(3) ..................................................................... 10

15 U.S.C. §1692e(5) ..................................................................... 10

15 U.S.C. §1692e(10) ........................................................................ 10, 24

15 U.S.C. §e(14) ............................................................................... 10, 24

## New York State Statutes

N.Y. Jud. Law §487 ........................................................................ 9

N.Y. Gen. Bus. Law §349 .............................................................. 9

## Federal Rules

Fed. R. Civ. P. 12(b)(6) ................................................................. 9

Fed R. Civ. P 56(c) ........................................................................ 13

Fed R. Civ. P 56(e) ........................................................................ 13

Fed. R. Evid. 106 ........................................................................... 22

## **PRELIMINARY STATEMENT**

Defendants-Appellees Forster & Garbus LLP ("Forster & Garbus"), Ronald Forster ("Attorney Forster"), and Mark A. Garbus ("Attorney Garbus") (collectively, "Forster & Garbus") submit this brief in opposition to the appeal taken by Plaintiff-Appellant Jack R. Nicholson ("Nicholson") from the Opinion and Order of the United States District Court for the Eastern District of New York (Feuerstein, J.) dated May 17, 2013, and entered on May 21, 2013, and the Judgment dated May 24, 2013, and entered on May 28, 2013, which granted summary judgment to Forster & Garbus, denied summary judgment to Nicholson, and dismissed the Complaint in its entirety with prejudice.

This action arises out of Nicholson's allegations that Forster & Garbus violated Section 1692e Federal Debt Collection Practices Act ("FDCPA") when their contracted debt collector, Intellicom Contact Centers ("Intellicom"), contacted Nicholson by telephone regarding a debt on December 10, 2010. Nicholson alleges that the Intellicom caller, calling on behalf of Forster & Garbus, was a non-attorney who allegedly misrepresented that he was either "a member of Forster & Garbus or under the direct supervision of an attorney at Forster & Garbus, when he is not." [J.A. 11 at ¶10].

Nicholson's appeal should be denied in its entirety, and the Opinion and Order and Judgment of the District Court affirmed in its entirety, because: (1) there

1

is no evidence that the Intellicom caller made any misrepresentations when he called Nicholson on December 10, 2010, because the caller never stated or implied that he was an attorney; (2) Nicholson admits that his FDCPA allegations are premised exclusively upon statements that Intellicom made to his attorney, not to him, which as a matter of law, are not actionable under the FDCPA; and (3) Nicholson improperly raises new arguments for the first time on appeal.  If the Court does conclude that the Intellicom caller made misrepresentations to Nicholson during the December 10, 2010 call, then the Court should still affirm the District Court's dismissal of the Complaint on the alternative ground that Nicholson admits that the alleged misrepresentations were not material.

## <u>QUESTIONS PRESENTED</u>

1. Did the District Court correctly hold that there was no violation of Section 1692e of the FDCPA during the telephone call on December 10, 2010, because the evidence demonstrates that the debt collector never falsely stated or implied that he was an attorney or working for a law firm, and it was unreasonable for the Plaintiff-Appellant, Nicholson, to believe otherwise?

   Yes, the District Court correctly held that there was no FDCPA violation because the evidence demonstrates that it was unreasonable for even the "least sophisticated consumer" to believe that he was speaking to an attorney on December 10, 2010, as the debt collector never falsely stated or implied that he was an attorney.

2. Did the District Court properly conclude that Nicholson's attorney's telephone conversation with the debt collector five days after the telephone call on December 10, 2010, was irrelevant to Nicholson's FDCPA claim?

   Yes, the District Court's holding was correct because, as a matter of law, statements to a debtor's attorney are not actionable under the FDCPA.

3

3. Does Nicholson improperly raise new arguments for the first time on appeal?

Yes, Nicholson improperly raises new arguments for the first time on appeal, which should be rejected.

4. If the Intellicom caller made misrepresentations to Nicholson during the telephone call on December 10, 2010, were those misrepresentations material?

As a preliminary matter, there were no such misrepresentations. However, even if there were, Nicholson admits that the alleged misrepresentations were not material, so as a matter of law, they did not violate the FDCPA.

## COUNTERSTATEMENT OF FACTS

**A. The Underlying Debt Collection Action**

Forster & Garbus is a law firm engaged in debt collection.  [J.A. 80 at lines 17-19; 429 at ¶3].   In 2009, Atlantic Credit & Finance, Inc. retained Forster & Garbus to commence a debt collection action against Nicholson in connection with an $8,809.43 balance on the debit MasterCard associated with Nicholson's HSBC checking account.   [J.A. 434; 430 at ¶10; 264 at line 12 - 265 at line 15].  Nicholson failed to answer the complaint in that action, and in December 2009, Forster & Garbus secured a default judgment in the amount of $9,226.72, representing the original debt plus interest and costs.  [J.A. 268-269; 430 at ¶10; 436].   Nicholson never disputed the validity of the 2009 default judgment, and when he retained an attorney in connection with the debt in 2011, it was to settle the debt, not to challenge the default judgment.  [J.A. 267-271].

**B. Forster & Garbus Retained Intellicom To Make a Portion of Its Collection Calls, and Trained and Continuously Monitored Intellicom for FDCPA Compliance.**

Forster & Garbus has a call center in its office in Commack, New York, and makes collection calls to its clients' debtors.  [J.A. 195, lines 15-20; 429 at ¶3.   In 2007, Forster & Garbus contracted Intellicom to assist in making a portion of those calls on Forster & Garbus' behalf.  [J.A. 41-52; 196 at lines 4-21; 429 at ¶4].  Intellicom was paid an hourly rate based upon its total calling hours, plus a

commission-based based for reaching certain collection goals. [J.A. 50 at §2; 129 at lines 8-13; 65 at lines 14-19; 170-171]. Forster & Garbus did not pay the individual Intellicom callers directly, but forwarded Intellicom's earnings to Intellicom's management for distribution. [J.A. 171-172].

Intellicom's contract with Forster & Garbus expressly required that Intellicom comply with the FDCPA when making debt collection calls on Forster & Garbus' behalf:

> Vendor[1] shall ensure that Vendor complies with all applicable local, state and federal laws and regulations in performing the Collection Services, including, without limitation, applicable regulatory guidelines and staff interpretations issued by the Federal Trade Commission. Vendor represents to Client[2] that it is familiar with and knowledgeable of the provisions and requirements of applicable federal and state statutes and regulations applicable to consumer collections, including, but not limited to, the Fair Debt Collection Practices Act, to ensure compliance therewith with respect to all collections activities conducted on behalf of Client. Vendor's primary collection method will be through telephone communications.

[J.A. 41-42 at §1.2(a)]. See also [J.A. 105 at lines 2-16; 430 at ¶5-7].

In order to ensure Intellicom's FDCPA compliance, Forster & Garbus provided training. [J.A.104 at line 13; 170 at lines 3-14; 430 at ¶5]. Intellicom sent a representative to Forster & Garbus to be trained in FDCPA compliance, and

---

[1] The contract refers to Intellicom as "Vendor."

[2] The contract refers to Forster & Garbus as "Client."

that person then returned to Intellicom to train Intellicom's employees.  [J.A. 170 at lines 3-15].  Forster & Garbus also provided Intellicom with FDCPA training manuals and other materials, which Forster & Garbus continuously updated in order to ensure that Intellicom employees were familiar with current FDCPA law.  [J.A. 430 at ¶5-6; 444 at ¶15; 448-49 at ¶4, 6, 7].

Forster & Garbus also reviewed Intellicom's work by live monitoring and recording of Intellicom's collection calls.  [A 104 at lines 15-21; 199 at line 24 – 200 at line 20; 430 at ¶8].  To do this, Forster & Garbus had Intellicom work on an Eastern Standard Time schedule, so that Intellicom's calls were made only when Forster & Garbus' office was open and Forster & Garbus could be present to live-monitor Intellicom's calls.  [J.A. 200 at lines 13-20].  Intellicom also live monitored and recorded its own callers.  [J.A. 216 at lines 2-10].

When a debtor receiving a call from Intellicom had a question or asked to speak to an attorney, the procedure was for Intellicom to transfer the call to a Forster & Garbus attorney.  [J.A. 203 at line 6 – 204 at line 12; 130 at lines 13-18].  If the Forster & Garbus attorney were busy or unavailable, Intellicom would give the debtor a phone number to call to speak with a Forster & Garbus attorney, and would also leave a message for the Forster & Garbus attorney to call the debtor back.  [J.A. 203 at line 20 – 204 at line 9.].

7

Forster & Garbus also provided Intellicom with guidelines governing how to discuss settlement with debtors. Any settlement offers that Intellicom made on Forster & Garbus' behalf were strictly pursuant to guidelines established by Forster & Garbus and its clients, and Intellicom could only make settlements within those guidelines. [J.A. 126 at line 23 – 127 at line 14; 201 at lines 6-23]. On appeal, Nicholson concedes that Forster & Garbus strictly controlled *all* aspects of Intellicom's communications with debtors. See Appellant Brief at p. 16.

## C. The December 10, 2010 Collection Call to Nicholson

In 2009 and 2010, Forster & Garbus and Intellicom made collection calls to Nicholson in an attempt to recover the HSBC debt. [J.A. 431 at ¶11]. Nicholson only spoke with callers on two separate occasions, April 23, 2010 and December 10, 2010.[3] [J.A. 431 at ¶12-14; 445 at ¶18; 456-459].

Only the December 10, 2010 call serves as the basis for Nicholson's FDCPA claim. [J.A. 11 at ¶7-9; 392 at ¶2, 4; 402-403 at ¶3]. The call was recorded. [J.A. 460-468; 431 at ¶15]. In accordance with a Forster & Garbus-created telephone script, the Intellicom caller, Ralph Bryant ("Bryant"), opened the call by stating that he was calling "on behalf of Forster & Garbus." [J.A. 461; 469; 431 at ¶17]. Bryant never claimed to be an attorney, and in fact, Nicholson confirmed this at his

---

[3] During discovery, Forster & Garbus served Plaintiff with a complete copy of its call logs for Nicholson's HSBC account, however, for purposes of brevity, only the call logs for the April 23 and December 10, 2010 calls were annexed to the summary judgment motion.

8

deposition.  [J.A. 278 at lines 2-4; 461-464].  Nicholson advised Bryant that he was represented by an attorney, Abraham Kleinman ("Kleinman"), and that Bryant should call Kleinman "to work out a settlement."   [J.A. 461 at lines 17-24].  Nicholson then gave Kleinman's phone number to Bryant, and instructed Bryant to call Kleinman to negotiate a settlement.  [J.A. 462-464; 431 at ¶18].  Nicholson and Bryant never actually discussed the HSBC debt or settlement terms.  [J.A. 168 at lines 5-9; 457 at Seq. line 195 – 459 at Seq. line 210; 460-468].

## PROCEDURAL HISTORY

Nicholson commenced this action by Summons and Complaint on February 2, 2011.  [J.A. 9].  He asserted three purported causes of action: (1) an FDCPA §1692e violation, based upon the December 10, 2010 telephone call from Intellicom; (2) attorney misconduct during a pending judicial proceeding, pursuant to New York Judiciary Law §487; and (3) deceptive business practices, pursuant to New York General Business Law §349.  Id.   In lieu of an answering the Complaint, Forster & Garbus moved to dismiss the attorney misconduct and deceptive business practice claims pursuant to Fed. R. Civ. P. 12(b)(6).  The District Court granted the motion in its entirety, and dismissed both claims. [J.A. 379-384].  Only the FDCPA claim remained.

Nicholson alleged that Forster & Garbus, Attorney Forster, and Attorney Garbus violated 15 U.S.C. §1692e and subparagraphs (5),[4] (10), and (14) during Intellicom's December 10, 2010 telephone call because the Intellicom caller was not an attorney, but allegedly misrepresented that he was "a member of Forster & Garbus or under the direct supervision of an attorney at Forster & Garbus, when he is not." [J.A. 11 at ¶10].

Forster & Garbus answered the FDCPA claim, and proceeded to discovery. [J.A. 385; 391; 418]. Upon the completion of discovery, all parties moved for summary judgment. [J.A. 25; 351]. On May 17, 2013, the District Court issued an Opinion and Order granting summary judgment to Forster & Garbus, denying summary judgment to Nicholson, and dismissing the Complaint in its entirety with prejudice. [J.A. 525-531].

The District Court held that the December 10, 2010 telephone call did not violate the FDCPA. [J.A. 529-530]. The District Court expressly rejected Nicholson's theory of liability, and held that the transcript of the call proved that Bryant never stated or implied that he was an attorney or that he worked for a law firm. Id. The District Court also rejected Nicholson's argument that Bryant's reference to a settlement offer falsely conveyed that he had full authority to unilaterally negotiate a settlement as an attorney would. Id. Furthermore, the

---

[4] Although Plaintiff cites to subparagraph (5), the text quoted in the Complaint is that of subparagraph (3). See Complaint at ¶23; 15 U.S.C. §1692e(3) and (5).

10

District Court noted Nicholson's failure to cite any authority that a non-attorney was forbidden from contacting debtors 'on behalf of" an attorney.  Id.  The District Court held:

> The transcript of the December 10, 2010 call demonstrates that even the "least sophisticated consumer" could not have reasonably believed that Bryant was an attorney.  Although Bryant stated that he was calling "on behalf of Forster & Garbus," he did not state or imply that he was himself an attorney… and plaintiff has offered no support for the proposition that the FDCPA prohibits a non-attorney from contacting debtors on an attorney's behalf…
>
> The Court rejects plaintiff's argument that Bryant's statement, "[W]e have a very good offer to settle this account," [J.A. 464 at lines 12-13], "unequivocally convey[ed] the impression both to Plaintiff and Plaintiff's counsel that he had full authority to unilaterally negotiate a settlement of Plaintiff's judgment"… Given Bryant's representation that he was calling "on behalf of" Forster & Garbus and the absence of any indication that he was an attorney, there was no reasonable basis for a consumer to conclude from the mention of the possibility of settlement that Bryant was an attorney representing the creditor.  Therefore, the December 10, 2010 phone call was not deceptive or misleading.

[J.A. 529-530] (internal citations omitted).

The District Court also rejected Nicholson's argument that a determination of whether Intellicom made misleading statements during the December 10, 2010 telephone call was something that should be reserved for a jury, and could not be disposed of through a summary judgment motion.  [J.A. 531 at n.7].  The Court

11

explained, "Whether a communication by a debt collector is misleading to the least sophisticated consumer is an objective question that may be determined by the Court as a matter of law." Id.[5]

Next, the District Court disposed of Nicholson's argument that Intellicom's statements to Nicholson's attorney, Kleinman, during a separate telephone call five days after the December 10, 2010 call, could provide the factual basis for his FDCPA claim, holding that as a matter of law, Intellicom's statements to Kleinman were not actionable under the FDCPA. [J.A. 530-531 at n.5].

On May 24, 2013, the District Court entered a Judgment dismissing Nicholson's Complaint with prejudice and directing the Clerk of the District Court to close the case.  [J.A. 532].  Nicholson's Notice of Appeal as to the Opinion and Order and the Judgment followed shortly thereafter.  [J.A. 533].

## SUMMARY OF ARGUMENT

Nicholson's appeal should be denied, and the decision of the District Court affirmed, for three reasons: (1) there is no evidence that the Intellicom caller made any misrepresentations when he called Nicholson on December 10, 2010, because the caller never stated or implied that he was an attorney; (2) Nicholson admits that his FDCPA allegations are premised exclusively upon statements that Intellicom

---

[5] On appeal, Nicholson concedes that the District Court was correct.  See Appellant's brief at p. 26.  ("Although courts are divided on whether breach of the least sophisticated consumer standard is a question of law or fact, the trend in the Second Circuit is to treat this question as a matter of law that can be resolved on a motion to dismiss or summary judgment.").

made to his attorney, not to him, which as a matter of law, are not actionable under the FDCPA; and (3) Nicholson improperly raises new arguments for the first time on appeal.

If the Court does conclude that the Intellicom caller made misrepresentations to Nicholson during the December 10, 2010 call, then the Court should still affirm the District Court's dismissal of the Complaint on the alternative ground that Nicholson admits that the alleged misrepresentations were not material.

## STANDARD OF REVIEW

A summary judgment decision is reviewed *de novo*.  See Miller v. Wolpoff & Abramson, LLP, 321 F. 3d 292, 300 (2d Cir. 2003).  Summary judgment is appropriate when "there is no genuine issue as to any material fact and…the moving party is entitled to judgment as a matter of law."  See Fed R. Civ. P 56(c). The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  While inferences should be drawn in favor of the non-moving party, speculative and conclusory allegations are insufficient to defeat a motion for summary judgment. See Fed. R. Civ. P. 56(e).  Rather, the non-movant "must set forth specific facts showing that there is a genuine issue for trial."  See Allen v. Coughlin, 64 F.3d 77 (2d Cir. 1995).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

13

judgment; the requirement is that there be no genuine issue of *material* fact."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) (emphasis added).

## ARGUMENT

## POINT I

## THERE WERE NO MISREPRESENTATIONS DURING THE DECEMBER 10, 2010 TELEPHONE CALL

FDCPA Section 1692e generally prohibits false, deceptive and misleading practices in connection with the collection of a consumer debt.  See 15 U.S.C. §1692e; Clomon v. Jackson, 988 F.2d 1314 (2d Cir. 1993).  The test for determining whether a particular practice violates Section 1692e is whether the "least sophisticated consumer" would be misled or deceived by the practice.  See Clomon, supra at 1318; Easterling v. Collecto, Inc., 692 F.3d 229 (2d Cir. 2012); Jacobson v. Healthcare Financial Services, Inc., 516 F.3d 85 (2d Cir. 2008). Courts employ the "least sophisticated consumer" standard because it ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd… consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes."  See Clomon, supra. at 1318-1319; Jacobson, supra at 90. However, the "least sophisticated consumer" standard still takes into account "the concept of reasonableness."  See Clomon, supra at 1319.  The FDCPA "does not extend to every bizarre or idiosyncratic interpretation of a collection notice and courts should apply the standard in a manner that protects debt collectors against

14

liability for unreasonable misinterpretations of collection notices." <u>Easterling</u>, <u>supra</u> at 233-34. (<u>quoting</u> <u>Clomon</u>, <u>supra</u> at 1319) (internal quotations omitted).

Here, Nicholson's claims are premised upon an assertion that it was misleading for Bryant, a non-attorney at Intellicom, to allegedly misrepresent that he was an attorney and "a member of Forster & Garbus or under the direct supervision of an attorney at Forster & Garbus, when he is not." [J.A. 11 at ¶10]. However, the evidence conclusively demonstrates that Bryant made no such misrepresentations, and to believe otherwise is unreasonable.

As discussed above, Bryant's December 10, 2010 call to Nicholson was conducted in accordance with a Forster & Garbus-created call script, in which Bryant introduced himself as calling "on behalf of Forster & Garbus":

| | |
|---|---|
| **Bryant:** | Yeah, hi, Jack.  This is Bryant.  I'm speaking with Jack R. Nicholson, right sir? |
| **Nicholson:** | Yes. |
| **Bryant:** | Okay.  Mr. Jack, I'm calling you on behalf of Foster & Garbus regarding your Atlantic Credit and Finance [HSBC][6] account, sir. |
| **Nicholson:** | Okay. |
| **Bryant:** | And this is an attempt to collect your debt.  Any information obtained will be used for that purpose… |

[J.A. 461].  <u>See also</u> [J.A. 431 at ¶17].  At no point in this introductory exchange, or at any other time during the call, did Bryant ever state that he was an attorney,

---

[6] The call transcript indicates that this word was "indiscernible," but it is undisputed that the word was "HSBC," as in Plaintiff's account.

15

an attorney at Forster & Garbus, or under the supervision of an attorney at Forster & Garbus. Id. In fact, Nicholson admitted as much during his deposition:

> **Q:** Did Bryant ever tell you that he was an attorney?
> **A:** He stated when he opened his conversation that he was calling from Forster & Garbus.
> **Q:** Did he ever tell you that he was an attorney?
> **A:** No.
> **Q:** Did you ever believe that Bryant was an attorney?
> **A:** Yes.
> **Q:** Why is that?
> **A:** Because he started the conversation saying he was from Forster & Garbus.
> **Q:** But he never told you that he was an attorney?
> **A:** Yeah. I thought he was when he said he was representing them. Someone from their office.

[J.A. 277 at line 22 – 278 at line 15]. Thus, the evidence is clear that Nicholson believed he was speaking with an attorney simply because Bryant mentioned the name "Forster & Garbus." Id. However, the transcript of the December 10, 2010 call proves that this belief was unreasonable because Bryant never stated or even implied that he was an attorney. [J.A. 460-468]. Although Nicholson argues on appeal that Bryant's reference to an ability to settle the debt implied that Bryant was an attorney or working for a law firm, the District Court rejected that argument because Nicholson failed to cite any authority in support. See Appellant's Brief at p. 22; [J.A. 530]. On appeal, Nicholson still fails to cite any authority in support of this argument. Id.

16

It is well-settled that when there are no direct statements or implications of attorney involvement, it is unreasonable, as a matter of law, for an FDCPA plaintiff to claim that he was misled into believing that he was communicating with an attorney.  See Rumpler v. Phillips & Cohen Associates, Ltd., 219 F.Supp.2d 251, 257 (E.D.N.Y. 2002) (dismissing Section 1692e claim because "least sophisticated consumer" could not "reasonably interpret" collection letter as having been issued by attorney because the letter did not contain the word "attorney," nor did it indicate the sender was a law firm); Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, 217 F.Supp.2d 336 (E.D.N.Y. 2002) (dismissing Section 1692e(3) and (10) claims because collection letter did not indicate the sender was an attorney or that letter came from a law firm); Ostrander v. Accelerated Receivables, 2009 WL 909646, *6 (W.D.N.Y. 2009) (dismissing Section 1692e(3) claim because collection call from defendant's "legal department" was insufficient to suggest that caller was an attorney); Samples v. Midland Credit Management, Inc., 2012 WL 2576392 (M.D. Tenn. 2012) (citing Rumpler, supra, and dismissing Section 1692e(3) claim because letter from the defendant's "Recovery Department" did not indicate attorney involvement or that sender was a law firm); Zaborac v. Phillips and Cohen Associates, Ltd., 330 F.Supp.2d 962 (N.D. Ill. 2004) (dismissing a Section 1692e claim because it was not reasonable for the plaintiff to believe collection letter came from a law firm

17

simply because defendant's name contained the word "Associates," which is used by other professional organizations besides law firms); In re Cheaves, 439 B.R. 220 (M.D. Fla. Bkrt. 2010) (dismissing Section 1692e(3) and (10) claims because (1) use of "Associates" in defendants' name did not imply they were a law firm, as that word is used by other non-attorney businesses; (2) letter from "subrogation specialist" could not reasonably be deemed to imply attorney involvement because understanding that term requires a level of sophistication; and (3) collection letter advising that "we have been obtained by the above creditor" did not reasonably imply law firm involvement).[7]

In contending with this well-established precedent and the evidence demonstrating that there was never a statement or implication that Bryant was an attorney, Nicholson argues on appeal that the case law and the evidence do not matter because he knew from prior experience that Forster & Garbus was a law firm. See Appellant's Brief at p. 25 ("He knew them to be a law firm licensed to practice law in the State of New York."). However, this argument fails because it is inconsistent with the "least sophisticated consumer" standard, which *does not* permit consideration of a consumer's prior experience and level of sophistication.

---

[7] See also Tromba v. MRS Associates, Inc., 323 F.Supp.2d 424, 428 (E.D.N.Y. 2004) (although the plaintiff's claim that a fax from a "senior legal associate" misled the plaintiff into believing the sender was an attorney was not properly before the court, the court still noted that "it harbors grave doubts as to whether any reasonable trier of fact, even under the least sophisticated consumer standard, could conclude that 'Senior Legal Associate' was equivalent with 'attorney at law' or 'lawyer.'").

See Leone v. Ashwood Financial, Inc., 257 F.R.D. 343, 347 (E.D.N.Y. 2009) (holding that the FDCPA imposes an objective, legal, non-factual analysis, "even where, as here, the plaintiff has past experience with the FDCPA"); Zaborac, supra at 969 (rejecting FDCPA plaintiff's argument because it "requires a level of sophistication, rather than the converse").  In fact, that argument is entirely antithetical to the concept of the "least sophisticated consumer."  Moreover, Bryant stated only that he was calling "on behalf of" Forster & Garbus.  He did not stated or imply that he was an attorney at Forster & Garbus.  Accordingly, the District Court correctly held that there is no factual support for Nicholson's FDCPA claim that a non-attorney misrepresented that he was an attorney, an attorney at Forster & Garbus, or under the direct supervision of Forster & Garbus attorneys, and the District Court's decision should be affirmed in its entirety.  [J.A. 529-530].

## POINT II

## INTELLICOM'S STATEMENTS TO NICHOLSON'S ATTORNEY ARE NOT ACTIONABLE UNDER THE FDCPA

It is well-established that statements to a debtor's attorney are not actionable under the FDCPA, and may not serve as the basis for an FDCPA claim, because the FDCPA's protective purpose is rendered moot when a debtor is represented, and thus protected, by counsel.  See Kropelnicki v. Siegel, 290 F.3d 118, 127-8 (2d Cir. 2002) (dicta); Boyd v. J.E. Robert Co., 2012 WL 4718723, *8 (E.D.N.Y. 2012); Tromba v. MRS Associates, Inc., 323 F.Supp.2d 424, 428 (E.D.N.Y. 2004);

19

Schuh v. Druckman & Sinel, L.L.P., 751 F.Supp.2d 542, 551 (S.D.N.Y. 2010);

Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 934 (9th Cir. 2007); Diesi v.

Shapiro, 330 F.Supp.2d 1002, 1004 (C.D. Ill. 2004); Morales v. Forster & Garbus,

LLP, 2012 WL 78630, *3 (D. Ariz. 2012).

Nonetheless, Nicholson's entire FDCPA claim – that Forster & Garbus

allegedly violated the FDCPA by retaining non-lawyers from a separate company

to make debt collection calls on behalf of Forster & Garbus [J.A. 11 at ¶7-10] – is

not actually based upon any statements that Intellicom made *to him*, but upon

statements that Intellicom made *exclusively* to Nicholson's attorney, Kleinman,

Kleinman then relayed to Nicholson, secondhand:

> **Q:** How did you come to believe that the caller was not a member of Forster & Garbus as it is alleged in paragraph number 8?
>
> **A:** When my attorneys spoke to him also from his office when I directed Bryant to call Mr. Kleinman. After he spoke to him and the conversation pursued, he told me later on that he found out he was not – he was calling from outside the United States.
>
> **Q:** When you say "he" told you later on, you mean Mr. Kleinman told you?
>
> **A:** Yes.
>
> **Q:** Beyond what Mr. Kleinman told you, do you have any personal knowledge as to the basis for the allegation in paragraph 8?
>
> **A:** I don't have any other personal knowledge other than what Mr. Kleinman told me.
>
> **Q:** So the allegation in paragraph 8 is based only on what Mr. Kleinman told you?
>
> **A:** Yes.

> Q:    Paragraph 9 of this document, the allegation states, "Upon information and belief, the debt collector that contacted Nicholson stating that he was calling from Forster & Garbus is under the employ of Jindal Intellicom Contact Centers located in New Delhi, India." Do you see that?
>
> A:    Yes.
>
> Q:    What is your basis for that allegation in paragraph 9?
>
> A:    Well, like I said before, after Mr. Kleinman spoke to Bryant, during their conversation Bryant admitted that he was not calling from the Commack office or Farmingdale office, that he was actually calling from India.
>
> Q:    The allegations in paragraph 9, are they based on anything that Bryant ever said to you?
>
> A:    No.
>
> Q:    Do you have personal knowledge of the facts alleged in paragraph 9?
>
> A:    No.

[J.A. 284 at line 19 - 286 at line 10].  On appeal, Nicholson *continues* to argue that Kleinman's telephone conversation with Intellicom is key evidence of the purported FDCPA violation.  <u>See</u> Appellant's Brief at p. 23.  However, Kleinman's conversation is irrelevant to Nicholson's claim *as a matter of law* because statements to a debtor's attorney are not subject to the FDCPA.  <u>See</u> <u>Kropelnicki</u>, <u>supra</u> at 127-8; <u>Boyd</u>, <u>supra</u> at *8; <u>Tromba</u>, <u>supra</u> at 428; <u>Schuh</u>, <u>supra</u> at 551; <u>Guerrero</u>, <u>supra</u> at 934; <u>Diesi</u>, <u>supra</u> at 1004; <u>Morales</u>, <u>supra</u> at *3.

In contending with this case law, Nicholson argues that the conversation between Kleinman and Intellicom should be considered in light of the rule of completeness.  <u>See</u> Appellant's brief at p. 23.  As a preliminary matter, this

argument should not be considered because it is improperly raised for the first time on appeal.  <u>See Mears v. Montgomery</u>, 2013 WL 5567480, *1 (2d Cir. 2013); <u>Bogle–Assegai v. Connecticut</u>, 470 F.3d 498, 504 (2d Cir. 2006).  Even if considered on the merits, the "completeness" argument still fails.  The rule of completeness, states that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time."  <u>See</u> Fed. R. Evid. 106.  The purpose of the rule is to avoid confusion that arises when a document is taken out of context.  <u>Id</u>. at 1972 Advisory Committee Notes.

Here, there is nothing taken out of context.  Rather, Nicholson is trying to get around the fact that his chosen theory of FDCPA liability – that Forster & Garbus allegedly violated the FDCPA by retaining non-lawyers from a separate company to make debt collection calls on behalf of Forster & Garbus [J.A. 11 at ¶7-10] – is, by his own admission, based *exclusively* upon statements that, as a matter of law, are not subject to the FDCPA.  There is no way around this, as is evident by Nicholson's disingenuous attempt to confuse the Court by conflating his and Kleinman's separate conversations with Intellicom as if they were one telephone call directed to him, rather than his attorney.  <u>See</u> Appellant's brief at p. 20 ("The sole purpose of misleading *the consumer* in this way is to emphasize the

22

seriousness of the call and intensify the pressure on the consumer to settle the debt.") (emphasis added). Nicholson fails, on appeal, to cite a single case in support of his novel argument that Kleinman's telephone conversation with Intellicom must be considered in support of the FDCPA claim. That is because no such case law exists. The FDCPA is a consumer protection statute, and its intended purpose is rendered moot when an attorney – someone who can protect a "least sophisticated consumer" – is there to actually protect the consumer, as Kleinman was in this case. <u>See</u> Appellant's Brief at p. 5 ("Faced with the Judgment, Nicholson retained the services of attorney ABRAHAM KLEINMAN, ESQ. ("Kleinman") to negotiate the debt with Forster & Garbus."). Nicholson is trying to advance an argument that the FDCPA should be extended into a realm that numerous courts, for good reason, have refused to enter. The key analysis here is not whether anything misleading was said to Kleinman on December 15, 2010, but whether anything misleading was said to Nicholson on December 10, 2010. As discussed above, there were no such misrepresentations made to Nicholson, and it was unreasonable for him to claim to have been misled. <u>See</u> Point I, <u>supra</u>. Accordingly, the Court should affirm the District Court's dismissal of the Complaint in its entirety.

## POINT III

## NICHOLSON IMPROPERLY RAISES
## NEW ARGUMENTS FOR THE FIRST TIME ON APPEAL

Nicholson improperly attempts, for the first time on appeal, to change his theory of liability.  It is improper to raise new arguments for the first time on appeal.  See Mears v. Montgomery, 2013 WL 5567480, *1 (2d Cir. 2013) ("However, he raises this for the first time on appeal, and as such, he has waived his opportunity to be heard on these arguments."); Bogle–Assegai v. Connecticut, 470 F.3d 498, 504 (2d Cir.2006) ("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.") (internal quotation omitted).  In his Appellant's brief, Nicholson argues, "The intentional concealment of the fact that a call to a consumer is from Intellicom of India, in and of itself, is a violation of the FDCPA."  See Appellant's Brief at p. 19. However, Nicholson never raised this theory of liability in the District Court. Rather, in his Complaint, Nicholson's theory of liability was that, "The practice of having a non attorney contact consumers from an independent Call Center located in India representing that the caller is a member of Forster & Garbus LLP violates 15 U.S.C. §§1692e, 1692e(10) and 1692e(l4), by misrepresenting that the caller is a member of Forster & Garbus or under the direct supervision of an attorney at Forster & Garbus, when he is not."  [J.A. 11 at ¶10].  Thus, Nicholson has, for the first time on appeal, improperly changed his theory of FDCPA from alleged

24

concealment of the fact that the caller was not an attorney, to alleged concealment of the fact that the caller was calling from India, rather than Commack, New York. Accordingly, this argument should be disregarded.  In any event, the argument should also be disregarded because, as discussed above, the purported misrepresentation upon which it is based comes exclusively from Nicholson's *attorney's* conversation with Intellicom, not from Nicholson's own conversation with Intellicom, which as discussed above, is not even actionable under the FDCPA.  See Point II, supra.

Nicholson also improperly argues for the first time on appeal that it was reasonable for him to believe he was speaking to an attorney during the December 10, 2010 call from Intellicom because the alleged misrepresentations during the telephone call, which are transitory, should be treated in a more plaintiff-friendly manner than written collection notices, which can be reviewed over and over.  See Appellant's brief at p. 27.  Nicholson never raised this argument in his Complaint or at any point in this matter prior to this appeal.  In any event, Nicholson concedes the speculative nature of this first-time argument when he asserts that his point is only arguable, not certain.  Id. ("Arguably, something that is heard during a few seconds is processed differently in the brain than something that is read and can be re-read.").  This is underscored by the fact that he offers no authority in support of

25

the argument beyond a conclusory assertion that the Court should treat the case in that manner.

The argument also fails because although Nicholson tries to link this new argument with his previously asserted argument that a determination of whether the December 10, 2010 Intellicom call was misleading is a question of fact for a jury, Nicholson concedes that the matter is actually a question of law that can properly be disposed of on summary judgment. <u>See</u> Appellant's brief at p. 26. ("Although courts are divided on whether breach of the least sophisticated consumer standard is a question of law or fact, the trend in the Second Circuit is to treat this question as a matter of law that can be resolved on a motion to dismiss or summary judgment."). Accordingly, the argument can be dismissed on that ground as well.

<b><u>POINT IV</u></b>

<b><u>IF THE COURT CONCLUDES THAT THERE WERE MISREPRESENTATIONS, DISMISSAL SHOULD STILL BE AFFIRMED BECAUSE PLAINTIFF ACKNOWLEDGES THAT THE ALLEGED MISREPRESENTATIONS WERE NOT MATERIAL</u></b>

If the Court concludes that the Intellicom caller made misrepresentations to Nicholson during the December 10, 2010 telephone call, the Court should still affirm the District Court's dismissal on the alternative ground that Nicholson admits that the purported misrepresentations were not material. District courts in this Circuit routinely hold that "a statement must be *materially* false or misleading

26

to violate Section 1692e." See Lane v. Fein, Such and Crane, LLP, 767 F.Supp.2d 382, 389 (E.D.N.Y. 2011) (emphasis in the original); Shami v. National Enterprise Systems, 2012 WL 6720698, *7 (E.D.N.Y. 2012) ("Even an objectively false statement must be material to violate §1692."); Broughman v. Chiari & Ilecki, LLP, 2012 WL 5880945, *4 (W.D.N.Y. 2012) ("Because there is no plausible basis to conclude that the technically false statement to which Plaintiff objects would influence an unsophisticated consumer to pay a debt he otherwise would not pay or impair his ability to challenge the debt, the contested language is not material, and does not violate sections 1692e, 1692e(5), or 1692e(10) of the FDCPA."); Hasbrouck v. Arrow Financial Services LLC, 2011 WL 1899250, *4 (N.D.N.Y. 2011) ("Moreover, there is a materiality requirement for allegedly false statements under §1692e… An immaterial statement or information does not contribute to the objective of the FDCPA nor does it undermine it… Statements are material if they influence a consumer's decision-to pay a debt or if they would impair the consumer's ability to challenge the debt."); Corazzini v. Litton Loan Servicing LLP, 2010 WL 6787231, *7 (N.D.N.Y. 2010) ("Finally, even if defendant did provide a false statement in one or more of its communications with plaintiff, plaintiff has failed to establish that the alleged false statement was material to her decision to pay her debt or that it impaired her ability to challenge the debt.").

27

Even this Court acknowledged the growing number of courts reading a materiality requirement into the FDCPA's prohibition of false, deceptive, or misleading practices in the collection of a debt.  See Gabriele v. American Home Mortg. Servicing, Inc., 503 Fed.Appx. 89, 94 (2d Cir. 2012).[8]

Here, the undisputed facts demonstrate that none of Intellicom's purported misrepresentations during the December 10, 2010 telephone call were material. Nicholson admits that he did nothing as a result of the December 10, 2010 call. [J.A. 282 at lines 19-23].  He made no payments on the HSBC debt.  [J.A. 282 at line 24 – 283 at line 1; 289 at lines 8-12; 420 at ¶12].  In fact, the only payments he ever made on the HSBC debt were before the December 10, 2010 telephone call from Intellicom.  [J.A. 289 at line 2 – 290 at line 21].  There were no payments on the debt after, or as a result of, the December 10, 2010 call.  [J.A. 282 at line 19 - 283 at line 1; 290 at lines 18-21].  Nicholson admits that he never felt coerced into making a payment as a result of the December 10, 2010 call, and simply turned the

---

[8] Citing Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 374 (4th Cir. 2012) (recognizing that "courts have generally held that violations grounded in 'false representations' must rest on material misrepresentations"); Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1034 (9th Cir. 2010) (finding that mislabeling in state complaint of interest owed on debt was not a material misrepresentation under the FDCPA); Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 596 (6th Cir. 2009) (finding that state court complaint which mischaracterized debtor's credit-card debt as a loan was not a materially false or misleading statement under the FDCPA); Hahn v. Triumph Partnerships LLC, 557 F.3d 755, 758 (7th Cir. 2009) (holding that "a false but nonmaterial statement is not actionable" under the FDCPA because "[a] statement cannot mislead unless it is material"); Lane v. Fein, Such & Crane LLP, supra (finding that misstatement in state complaint was not materially false or misleading under FDCPA); Walsh v. Law Offices of Howard Lee Schiff, P.C., 2012 WL 4372251, at *3-6 (D. Conn. 2012) (adopting materiality requirement and dismissing §1692e claims based on discovery disputes and alleged procedural misconduct in state court action).

28

matter over to his attorney for handling.  [J.A. 283 at lines 2-6].  He also never believed, as a result of the December 10, 2010 call, that he was legally precluded from challenging the debt.   [J.A. 283 at lines 7-10].  In fact, Nicholson admits that he never attempted to ever dispute or challenge the debt.  Id. at p. 13-14.  [J.A. 268 at line 24 – 269 at line 10].  Furthermore, his attorney never negotiated a settlement of the debt.  [J.A. 289 at lines 17-19].

This evidence undisputedly demonstrates that the December 10, 2010 call had absolutely no effect on Nicholson.  As such, the alleged misrepresentations were not material, and did not violate the FDCPA as a matter of law.  See Hasbrouck, supra ("Statements are material if they influence a consumer's decision to pay a debt or if they would impair the consumer's ability to challenge the debt.") (citing O'Rourke v. Palisades Acquisition XYI, LLC, 635 F.3d 938, 942 (7th Cir. 2011); Broughman, supra ("[H]e does not allege that he was misled by the statement, nor does he make any attempt to explain how it would either coerce an unsophisticated consumer to act against his interest or lull him into inactivity to his detriment.").   On appeal, Nicholson fails to address this point, despite addressing it in the court below.  [J.A. 324-325; 504].  The District Court's decision can be affirmed on these alternative grounds.

## **CONCLUSION**

It is respectfully requested that on the facts, the law, and for all the reasons set forth herein, that this Court enter an Order affirming the District Court's Opinion and Order and subsequent Judgment granting summary judgment to Defendants-Appellees, denying summary judgment to Plaintiff-Appellant, and dismissing the Complaint in its entirety with prejudice, along with such other relief as this Court deems just and proper.

Dated: New York, New York
　　　December 6, 2013

KAUFMAN BORGEEST & RYAN LLP

__/S/_____
　　　Jonathan B. Bruno, Esq.
*Attorneys for Defendants-Appellees*
120 Broadway, 14th Floor
New York, New York 10271
KBR File No.: 252.001
Telephone No.: (212) 980-9600
Facsimile: (212) 980-9291

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1.    I certify that this brief complies with the type-volume limitation of Fed.R.App.P.32(a)(7)(B) because:

This brief contains 6,529 words, excluding the parts of the brief exempted by Fed.R.App.32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed.R.App.P.32(a)(5) and the type style requirements of Fed.R.App.P32(a)(6) because:

This brief has been prepared in Proportionally-Space typeface using Microsoft Word, in Times New Roman, Font Size 14.

Dated:    New York, New York
          December 6, 2013